UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/10/2017

-------------------------------------------------------------- X
CCM ROCHESTER, INC.,                     :
                                         :
                        Plaintiff,       :
                                         :        14-CV-3600 (VEC)
          -against-                      :
                                         :        OPINION & ORDER
FEDERATED INVESTORS, INC.,               :
                                         :
                        Defendant.       :
-------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

      Plaintiff CCM Rochester, Inc., a registered investment advisor formerly known as Clover Capital Management, Inc. ("CCM" or "Clover"), sued Defendant Federated Investors, Inc. ("Federated"), for damages arising out of Federated's acquisition of Clover. Plaintiff claims that Federated fraudulently induced Clover into the acquisition contract and that Federated breached the implied covenant of good faith and fair dealing. Federated moves for summary judgment on both claims. Defendant's Motion for Summary Judgment, Dkt. 76. For the reasons discussed below, the Motion is GRANTED in its entirety.

## FACTUAL AND PROCEDURAL BACKGROUND

      Clover issued a request for proposal ("RFP") "seeking a strategic partner with an extensive distribution network and the marketing capabilities necessary" to grow Clover's investment business. SOF ¶¶ 38, 677.[1] Federated responded to the RFP with a proposal to

---

[1] This Court uses the following abbreviations herein: Defendant Federated Investors, Inc.'s (1) Reply to Plaintiff CCM Rochester, Inc.'s Responses to Federated's Rule 56.1 Statement; and (2) Responses and Objections to CCM's Counterstatement of Facts ("SOF"), Dkt. 95; Declaration of Michael Jones ("Jones Decl."), Dkt. 90; Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment ("Opp. Br."), Dkt.

acquire 100% of Clover's assets. Fed. Ex. 6 ("RFP Response") at 6. According to Plaintiff, in the negotiations leading to Clover's acquisition (the "Acquisition"), "Federated emphasized its distribution capabilities and represented to Clover, among other things, that Federated intended to apply its resources to significantly and rapidly expand Clover's assets under management." Jones Decl. ¶ 4. Plaintiff also asserts that Federated represented that it "intended to use its 'powerful distribution platform' to sell Clover Investment Products and 'fuel the growth' of Clover's investment management franchise." Opp. Br. at 13 (citing SOF ¶¶ 335, 575). Federated disputes Plaintiff's characterization of Federated's purported representations and admits only that the RFP Response stated that: Federated "brings a powerful distribution platform on which to sell CCM managed products" and "plan[s] on distributing CCM managed products through all of our existing channels"; one of Federated's "primary goals" was to "[e]stablish a growth platform for the combined business; and [s]ell CCM products through our distribution platform"; and that "Federated can provide resources in a variety of ways—all of which provide leverage and opportunity to CCM by: . . Applying the resources of Federated to fuel the growth of CCM's business." SOF ¶¶ 676, 678 (citing RFP Response).[2]

---

88; CCM Rochester, Inc.'s Responses to Federated Investors, Inc.'s Rule 56.1 Statement and Counterstatement of Facts ("Clover SOF"), Dkt. 89; Complaint ("Compl."), Dkt. 2; Exhibits to Defendant Federated Investors, Inc.'s Local Civil Rule 56.1 Statement of Material Undisputed Facts in Support of its Motion for Summary Judgment ("Fed. Ex. __"), Dkts. 82–86; Exhibits to Declaration of James D'Elicio in Opposition to Federated Investors, Inc.'s Motion for Summary Judgment ("Clover Ex. __"), Dkt. 91; Declaration of Thomas Territ in Support of Motion to Preclude Certain Opinions Proffered by Plaintiff ("Territ Decl."), Dkt. 48; Memorandum of Law in Support of Defendant Federated Investors, Inc.'s Motion for Summary Judgment ("Opening Br."), Dkt. 77; Defendant Federated Investors, Inc.'s Reply Brief in Support of its Motion for Summary Judgment ("Reply Br."), Dkt. 92.

[2]     Other than the RFP Response, the parties have submitted no other document reflecting any representation that Federated made during the run up to the Acquisition relating to its plans for distributing Clover products. SOF ¶ 76.

In 2008, the parties executed the Asset Purchase Agreement ("APA"), pursuant to which Federated acquired substantially all of Clover's assets (the "Acquisition"). SOF ¶ 78; Fed. Ex. 12. In exchange, Federated paid Clover $30 million at the time of the closing and agreed to make contingent payments ("Earnout Payments") over five years ("Earnout Period"), provided that the growth in Clover's revenue was greater than a certain amount. Fed. Ex. 12 at 32; SOF ¶ 104, 539.[3] The APA did not require Federated to use particular levels of marketing or sales support for Clover products, nor did it guarantee that Clover would receive Earnout Payments at all, let alone Earnout Payments equivalent to the maximum available under the APA. SOF ¶¶ 93–94.[4] The Earnout Period started on December 1, 2008, and concluded on December 1, 2013. SOF ¶ 88.

Following the acquisition, in March 2009, Federated created two mutual funds: Federated Clover Large Value Fund ("Clover Value") and Federated Clover Small Value Fund ("Clover Small Cap"). Territ Decl. ¶ 4; SOF ¶¶ 721, 724. Federated also offered other mutual funds on its sales platform, such as the Federated Strategic Value Dividend Fund ("Strategic Value"). SOF ¶ 735. Although Clover Value and Strategic Value "compete in the same [investment] space," the two funds reflect different fund profiles and investment options: Strategic Value invests in "high dividend yielding stocks of companies with dividend growth potential" whereas

---

[3]  Plaintiff asserts that Federated paid Clover $1.88 in Earnout Payments for every dollar of incremental revenue Federated raised for Clover products during the Earnout Period. Federated does not dispute CCM's arithmetic but notes that the comparison of the amount of Earnout Payments to incremental revenue growth during the Earnout Period is meaningless; Federated asserts that its economic interests were aligned with Clover's because it continues to benefit from the Acquisition long after the Earnout Payments have ceased. Reply Br. at 4–5.

[4]  The maximum amount of Earnout Payments available under the APA was approximately $55 million. SOF ¶ 121.

Clover Value invests in companies that have capital appreciation potential, without regard to dividend yield. SOF ¶¶ 554–558, 736–38, 742; Clover Ex. 61.

The undisputed record reflects that during the Earnout Period, Federated created marketing materials and presentations for the Clover funds, SOF ¶¶ 344–366; promoted the Clover funds on its websites and through the media, SOF ¶¶ 367–404; promoted the Clover funds to its internal sales force through presentations at its National, Regional, and Mid-Year Sales Conferences, SOF ¶¶ 267–88, 295–97; and responded to inquiries regarding the Clover funds by current and potential clients, SOF ¶¶ 405–408. Although Plaintiff admits these marketing activities occurred, Plaintiff contends that Federated intentionally and in bad faith delayed *distributing* Clover Value.[5]

In support of its assertion that Federated delayed distributing Clover Value, Plaintiff offers several emails from Federated directors and members of Federated's Clover sales team, including a 2012 email from Stephen Carl, Federated Clover's Chief Operations Officer, noting that Clover Value had not been "taken to market . . . yet," Clover Ex. 43. Plaintiff also cites a 2013 email from Peter Smith, a portfolio manager for Clover products, seeking comments "to begin positioning the Clover Value fund," Clover Ex. 61; and a 2014 email from Mr. Smith stating that "the Clover Value fund is getting teed up to be emphasized by the sales force for the second half of this year . . . all are on board to ramp up our efforts," Clover Ex. 64. Federated disputes Plaintiff's evidence and theory of delay.

---

[5]   At Federated and herein, the terms "sales" and "distribution" are used interchangeably. *See* SOF ¶ 772.

Plaintiff asserts that Federated "affirmatively and aggressively steered investors seeking large cap value investment products away from [] Clover Value to Strategic Value." Opp. Br. at 2. In marshalling its evidence, Plaintiff relies primarily on two incidents as proof of bad faith: a disagreement over the strategy to use in pitching business to a particular University client (the "University Client") and Federated's refusal to agree to a reduced fee requested by MassMutual, a large institutional client.[6]

In the fall of 2009, the University Client advised Federated that it was interested in moving its account to "a different large cap value mandate." Clover Ex. E ("Heaton Tr.") at 41:1–9. Federated salespersons on the account initially proposed that the University Client consider Clover or MDT fund.[7] SOF ¶¶ 833–36. A Federated director, Ms. Cathie Applegate, informed the Federated salespersons that Strategic Value might be attractive to the University Client, Clover Exs. 7–8, Fed. Ex. N-2 ("Applegate Tr.") at 154:18–155:15 (discussing Clover Ex. 8), and that the Chief Investment Officer, Mr. Stephen Auth, and the Client Portfolio

---

[6] In its opposition brief, Plaintiff also cited the following as examples of "how Federated aggressively sought to steer large cap value opportunities to Strategic Value": (1) an employee told Mr. Carl of three instances in addition to the incident involving the University Client in which Federated pushed Strategic Value, not Clover Value, in response to an RFP, Clover Ex. B ("Carl 30(b)(6) Tr.") at 151:3–12; and (2) Federated conducted an "intensive marketing and distribution campaign on behalf [of] Strategic Value," Clover SOF ¶ 892, but not Clover Value, even though Clover Value outperformed Strategic Value during the relevant time period, Opp. Br. at 10–11.

Although this evidence was neither cited nor argued in Plaintiff's brief, Plaintiff's Rule 56.1 Statement included the following evidence under the heading "Federated Steered Clients Away from Clover Products and Toward Strategic Value:" an email from Mr. Smith complaining about "the sales force['s] 'sole focus' [] on the Strategic Value product," Clover Ex. 27; an email referencing the creation of "more and more [Strategic Value] pieces, while . . . they can't handle more Clover pieces," Clover Ex. 60; an email stating that "'the market stinks' is not an answer" to "why we are raising 3 million a day in strat value and only 3 million a week in clover," Clover Ex. 4; an email stating that "the more you only point clients at Clover the less they can see more Federated product that might cause them not to choose Clover," Clover Ex. 22; and that there was no "Top Product Campaign" for Clover products but that there was one for Strategic Value, SOF ¶¶ 820–23. *See* Clover SOF ¶¶ 808–09, 811, 814–15, 820, 823. Plaintiff makes no arguments regarding this evidence, and, in any event, it does not tend to demonstrate fraudulent intent or bad faith, which, for the reasons discussed herein, is fatal to Plaintiff's claims.

[7] MDT is another investment strategy offered by Federated.

Manager did not want Strategic Value to be pitched as the last spot to the University, Clover Ex. 15. Ultimately, Federated pitched Clover Value as Federated's top choice for the University Client, Clover Ex. 21, SOF ¶ 864, and the University Client moved its account to Clover Value. SOF ¶ 445.

The second incident on which Plaintiff relies to prove bad faith involved MassMutual, a large institutional customer. In May 2009, MassMutual approached Clover with an opportunity to manage one of MassMutual's small cap funds, SOF ¶ 865, but it proposed a fee that was lower than Federated's usual rate and that was lower than the fee Clover had previously received from MassMutual. SOF ¶¶ 650–51, 869; Carl 30(b)(6) Tr. at 183:2–16. Federated made MassMutual a counter-offer on the fee proposal, which MassMutual rejected. SOF ¶¶ 652–54. Although Plaintiff asserts, *ipse dixit*, that Federated "routinely granted comparable discounts to its own institutional clients," Opp. Br. at 11, Plaintiff does not provide any evidence to support that assertion.[8]

Ultimately, during the Earnout Period, Federated's gross sales of Clover Value and Clover Small Cap were approximately $364 million and $677 million, respectively, totaling over $1 billion in gross sales.[9] SOF ¶ 465. In total, Federated's gross sales of Clover mutual funds,

---

[8] Plaintiff cites deposition testimony from the Federated director authorized to grant fee discounts stating that the director's "guess" was that he did grant fee discounts for other opportunities in 2009. Clover Ex. D ("Fisher Tr.") at 101:4–10. Even if Federated did grant fee discounts for other opportunities, Plaintiff adduces no evidence that any of Federated's prior discounts was a comparable fee discount for a comparable client.

[9] Plaintiff asserts that "gross sales" is misleading because it omits redemptions, but Plaintiff otherwise does not dispute these figures.

other Clover products, and Clover's sub-advising arrangements exceeded $2 billion. SOF ¶ 477. Federated paid a total of $18,462,305 in Earnout Payments to Clover. SOF ¶ 540.

In 2014, Plaintiff initiated this litigation against Federated, alleging fraudulent inducement and breach of an implied duty of good faith and fair dealing.[10] Plaintiff contends that by representing to Clover that it intended to use its "powerful distribution platform" to sell Clover products and "fuel the growth" of Clover's business, Federated fraudulently induced Clover to enter into the APA and to accept much of the consideration in the form of future payments that were dependent upon Clover's post-Acquisition growth. Compl. ¶¶ 117–21. Plaintiff also asserts that Federated's conduct with respect to the Clover products depressed the Earnout Payments, thereby breaching Federated's duty of good faith and fair dealing. Compl. ¶¶ 128–35. Federated moves for summary judgment on both claims.

## DISCUSSION

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A genuine dispute exists when the evidence is such that, if the party against whom summary judgment is sought is given the benefit of all permissible inferences and all credibility assessments, a rational factfinder could resolve all material factual issues in favor of that party." *Sec. & Exch. Comm'n*

---

[10] On November 25, 2014, this Court dismissed Plaintiff's claim for breach of contract to use best efforts. Nov. 25, 2014, Op. & Order, Dkt. 21.

*v. Sourlis*, No. 14-2301-CV(L), 2016 WL 7093927, at *2 (2d Cir. Dec. 6, 2016) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The non-moving party, however, "must do more than simply show that there is some metaphysical doubt as to the material facts" and "may not rely on conclusory allegations or unsubstantiated speculation." *Jeffreys v. City of New York,* 426 F.3d 549, 554 (2d Cir. 2005) (citations and internal quotation marks omitted). Rather, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." *Weinstock v. Columbia Univ*., 224 F.3d 33, 41 (2d Cir. 2000) (quoting *Anderson*, 477 U.S. at 256). "Summary judgment is appropriate when there can be but one reasonable conclusion as to the verdict, *i.e.*, it is quite clear what the truth is, and no rational factfinder could find in favor of the nonmovant." *Sourlis*, 2016 WL 7093927, at *2 (citations and internal quotation marks omitted).

### I.   **Fraudulent Inducement**

Plaintiff claims that Federated fraudulently induced it to enter into the APA through Federated's purported misrepresentation that it "intended to apply its resources to significantly and rapidly expand Clover's assets under management." Jones Decl. ¶ 4. To prove fraudulent inducement under New York law, the plaintiff must establish by clear and convincing evidence "(i) a material misrepresentation of a presently existing or past fact; (ii) an intent to deceive; (iii) reasonable reliance on the misrepresentation by appellants; and (iv) resulting damages." *Ipcon Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 58, 62 (2d Cir. 2012) (citation omitted); *see also Hindsight Sols., LLC v. Citigroup Inc.*, 53 F. Supp. 3d 747, 772 (S.D.N.Y. 2014) (citing *Crigger v. Fahnestock & Co.*, 443 F.3d 230, 234 (2d Cir. 2006)). Federated argues that summary judgment on the fraudulent inducement claim must be granted because there is no

evidence that Federated misrepresented its plans to market and promote Clover's products or that Plaintiff reasonably relied on any misrepresentation.[11]

Where, as here, the purported misrepresentation is a promise of future action, the plaintiff must prove that the promise was made with an intent not to perform. *Century Pac., Inc. v. Hilton Hotels Corp.*, 528 F. Supp. 2d 206, 222 (S.D.N.Y. 2007) ("A present expression of the intent to perform a future act is actionable as fraud only if actually made with a preconceived and undisclosed intention of not performing it.") (citations and internal marks omitted), *aff'd*, 354 F. App'x 496 (2d Cir. 2009). To sustain a fraudulent inducement claim without direct evidence, the plaintiff must provide "evidence of facts that support a strong inference that the defendants possessed the requisite fraudulent intent." *Id.* at 222–23 (internal quotation marks and citation omitted).

Plaintiff's only evidence of fraudulent intent is its assertion that Federated delayed "fulfilling [its] promises" to distribute Clover's products and grow Clover's business "until late into and after the Earnout Period." Opp. Br. at 14. In particular, Plaintiff asserts that Federated delayed its distribution of Clover Value.[12] Plaintiff, for example, cites: an email from 2012, the fourth year of the Earnout Period, stating that Clover Value had not been "taken . . . to market

---

[11] Plaintiff opposes summary judgment on the grounds that "issues of motive and intent are usually inappropriate for disposition on summary judgment." Opp. Br. at 14 (quoting *Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb Inc.*, 967 F.2d 742, 751 (2d Cir. 1992)). Although issues of intent are fact-based, to survive summary judgment the plaintiff nevertheless must set forth "specific facts showing that there is a genuine issue for trial." *Sista*, 445 F.3d at 169. Merely stating that intent is a question of fact does not discharge the plaintiff's burden at the summary judgment stage.

[12] Plaintiff's evidence of Federated's "delay" in distributing Clover products only concerns the distribution of Clover Value, and not any other Clover product. Federated's purported misrepresentation, however, is with respect to Clover products generally, not Clover Value specifically. This, in and of itself, undercuts Plaintiff's argument. Nevertheless, because the fraudulent-inducement claim fails for the reasons discussed, this Court need not address Plaintiff's attempt to elide Clover Value with other Clover products.

yet," Clover Ex. 43; a 2013 email discussing "begin[ning] the process of positioning the Clover Value fund," Clover Ex. 61; and a 2014 email stating that Clover Value was "getting teed up to be emphasized by the sales force," Clover Ex. 64.  Relatedly, Plaintiff asserts that Federated was financially incentivized to delay distribution of Clover "until as late as possible in the Earnout Period," because it was required to pay $1.88 to Clover for each additional $1 in revenue.  Opp. Br. at 14–15.  Plaintiff argues that Federated's "delay" is circumstantial evidence that Federated never intended to make good on its marketing and distribution promises.  Opp. Br. at 14.

Factual and logical problems pervade Plaintiff's argument.  The undisputed record reflects that Federated sold Clover Value throughout the Earnout Period:  for example, Federated sold approximately $161 million of Clover Value in 2010, the second year of the Earnout Period.  SOF ¶ 465.  Indeed, Federated's gross sales of Clover Value in 2010 were greater than the *combined* Clover Value gross sales for the last two years of the Earnout Period.  SOF ¶ 465.  As a logical matter, even if this Court assumes that Federated did delay selling some Clover products (or had a financial incentive to do so), Plaintiff fails to demonstrate that such *post*-Acquisition delay is evidence that Federated had no intention of fulfilling its *pre*-Acquisition promise to sell Clover's products and grow Clover's business.  Plaintiff offers no evidence that Federated had a fraudulent intent pre-Acquisition.

Perhaps to address this logical gap, Plaintiff cites *Deem v. Lockheed Corp.*, No. 87 Civ. 7017 (JMC), 1991 U.S. Dist. LEXIS 13216 (S.D.N.Y. Sept. 25, 1991), for the proposition that failure to honor a promise is circumstantial evidence that there was no intent to fulfill that promise.  Plaintiff, however, misreads *Deem.*  In *Deem*, the district court found that the fact that the defendants "failed to honor their promise" to pay a fee with respect to one account was circumstantial evidence that the defendants did not intend to pay a fee with respect to a *different*

10

account. *Deem*, 1991 U.S. Dist. LEXIS 13216, at *16. Those facts do not exist in this case. Here, Plaintiff's theory is that Federated's failure to honor its promise is circumstantial evidence that it never intended to perform with respect to that *same* promise. *Deem* falls far short of supporting Plaintiff's argument that Federated's alleged delay in selling Clover Value is "strong circumstantial evidence" of Federated's fraudulent intent.

Because Plaintiff has no evidence that at the time it was courting Clover, Federated did not intend to sell Clover's products or grow Clover's business, no rational juror could find that Federated possessed an intent to deceive. Therefore, this Court GRANTS Federated's motion for summary judgment as to the fraudulent inducement claim.[13]

## II. Breach of the Implied Duty of Good Faith and Fair Dealing

Plaintiff next claims that Federated breached its implied covenant to make reasonable, good faith efforts to market and distribute Clover's products. Federated moves for summary judgment on this claim on the ground that Plaintiff has failed to adduce evidence of bad faith.

Under New York law, a covenant of good faith and fair dealing is implied in all contracts. *Sec. Plans, Inc. v. CUNA Mut. Ins. Soc'y*, 769 F.3d 807, 817 (2d Cir. 2014). "Pursuant to this principle, neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Id.* (quoting *Moran v. Erk*, 11 N.Y.3d 452, 456 (2008)). The covenant does not, however, prohibit a party from acting in its own interests in a way "that may incidentally lessen the other party's expected benefit." *Id.* (internal quotation marks and citation omitted). Nor is it a mechanism to turn a dispute over the

---

[13] In its briefing, Federated also argues that summary judgment should be granted in its favor because Plaintiff failed to adduce any evidence that Plaintiff reasonably relied on any of Federated's purported misrepresentations. Opening Br. at 16. Because Plaintiff has no evidence of fraudulent intent, the Court need not reach the question of reasonable reliance.

exercise of business judgment into a tort. *See Interpublic Grp. of Cos. v. Fratarcangelo*, No. 00-Civ.-3323 SHS, 2002 WL 31682389, at *14 (S.D.N.Y. Nov. 26, 2002) (citing *Travelers Int'l, A.G. v. Trans World Airlines, Inc.,* 41 F.3d 1570, 1577 (2d Cir.1994)). Rather, the covenant is "breached only in a narrow range of cases. A plaintiff must show substantially more than evidence that the defendant's actions were negligent or inept. The plaintiff must instead demonstrate something more, such as that the defendant acted arbitrarily or irrationally in exercising the discretion afforded to it under the contract." *Sec. Plans, Inc.*, 769 F.3d at 817–18 (internal marks and citation omitted).

As evidence of Federated's bad faith, Plaintiff again cites to Federated's alleged delay in distributing Clover's products "until as late in the Earnout Period as possible" and its financial incentive to do so. Opp. Br. at 19–20. Plaintiff also asserts that Federated's marketing and distribution of Strategic Value drove down Clover's Earnout Payments and that there is "a question of fact" as to whether the impact of Strategic Value on the Earnout Payments "was deliberate, not incidental." Opp. Br. at 20. Lastly, Plaintiff cites two "specific instances of bad faith conduct": the University Client account and the MassMutual fees. Opp. Br. at 21.

Even if this Court accepts Plaintiff's position on Federated's financial incentives and Plaintiff's argument that Federated had a motive to harm Plaintiff, Plaintiff has presented no evidence that tends to show that Federated acted on that motive by intentionally destroying or attempting to destroy Plaintiff's ability to maximize its Earnout Payments. Even if there was a delay in Federated's efforts to distribute Clover's products, which Federated disputes, Plaintiff fails to explain how that delay is evidence of arbitrary or irrational conduct. *See Sec. Plans, Inc.*, 769 F.3d at 817–18 (citations omitted); *see also Wagner v. JP Morgan Chase Bank*, No. 06 Civ. 3126(RJS), 2011 WL 856262, at *4 (S.D.N.Y. Mar. 9, 2011) (bad faith "standard is not satisfied

by policies that are misguided or ignorant or even merely negligent" (internal quotation marks and citation omitted)).

Plaintiff's assertion that Federated's distribution of Strategic Value was a "deliberate, not incidental" act, Opp. Br. at 20, to drive down Earnout Payments is entirely speculative; Plaintiff adduces no evidence tending to show that any decision to pitch Strategic Value, rather than Clover Value, was made in bad faith. Plaintiff's assertion that Federated generated sales for Strategic Value despite Clover Value's better market performance is unavailing: Plaintiff admits that it understood that the "Federated sales and marketing team would continue to support all of Federated's products"—not just the Clover products. SOF ¶ 165. Plaintiff also cites Mr. Carl's 30(b)(6) testimony that a Federated employee told him of three instances (in addition to the situation with the University Client) in which Federated pushed Strategic Value, not Clover Value, in response to an RFP, but that testimony is inadmissible hearsay. Even if it were not hearsay, Plaintiff has presented no evidence that would support its argument that Federated chose to pitch Strategic Value rather than Clover Value in bad faith.[14]

Plaintiff's two examples of "specific instances of bad faith conduct," Opp. Br. at 21, also fail to show that Federated acted in bad faith. With respect to the University Client, although Ms. Applegate and others may have thought that Strategic Value should have been pitched above Clover Value, the undisputed record reflects that Federated ultimately pitched Clover Value first in its recommendation to the University Client and that the University Client invested in Clover

---

[14] Given the fact that Strategic Value focused on dividend paying companies and Clover Value did not, an obvious neutral explanation for the evidence Plaintiff presents is that those customers were interested in income and not just capital appreciation. That being the case, the fact, standing alone, that Federated pitched Strategic Value to some customers rather than Clover Value does not satisfy Plaintiff's obligation to come forward with evidence of bad faith.

13

Value. Clover Ex. 21, SOF ¶¶ 864, 445. Plaintiff offers no evidence indicating that Ms. Applegate's opinion or her representation of Mr. Auth's opinion was anything other than their best business judgment about what fund would best serve the University Client's needs. Moreover, the undisputed fact that Federated ultimately pitched Clover Value *first* for that account guts Plaintiff's attempt to point to Federated's handling of that account as evidence of bad faith.[15]

MassMutual's request for a reduced fee is similarly unavailing. Plaintiff argues that Federated's denial of MassMutual's proposal was an "arbitrary refusal to permit Clover to capitalize on opportunities to maximize its revenue growth." Opp. Br. at 21. But Plaintiff fails to adduce any evidence tending to show that Federated's refusal to accept MassMutual's fee proposal was arbitrary or irrational. As Plaintiff admits, the proposed fee was lower than Clover's usual management fee. SOF ¶¶ 650–51, 869; Clover Ex. B at 183:2–16. The undisputed record also reflects that Federated made MassMutual a counter-offer, which MassMutual rejected. SOF ¶ 654. Missing from the record is any indication that Federated's negotiation of the proposed fee schedule was done in bad faith.

Plaintiff's lack of any evidence of bad faith is fatal to its claim that Federated breached the implied covenant of good faith and fair dealing. *See Wagner*, 2011 WL 856262, at *4 (collecting cases). Because no rational juror could find, based on the record in this case, that Federated acted in bad faith, this Court GRANTS Federated's motion for summary judgment on Plaintiff's claim of breach of the implied covenant of good faith and fair dealing.

---

[15] In fact, Ms. Applegate explained that she thought that Strategic Value might be attractive to the University Client because Strategic Value would have allowed the University Client to retain their same relationship manager and "continuity in investment folks." Applegate Tr. at 154:18–155:15.

## CONCLUSION

For the foregoing reasons, Federated's motion for summary judgment is GRANTED in its entirety.[16] The Clerk of Court is respectfully directed to terminate Dkt. No. 76 and close this case.

SO ORDERED.

Date: February 10, 2017
New York, New York

VALERIE CAPRONI
United States District Judge

---

[16] Federated also moved for summary judgment on the grounds that Plaintiff lacked evidence of causation or damages. Because the Motion is granted for the reasons stated above, the Court needs not address the parties' arguments on causation or damages.

15